May it please the Court, my name is Rosie Cho and I represent the Petitioner in this matter. This is a case about a man who was deprived of a full and fair hearing. It comes down to that. The representation that he received before the Court and before the BIA felt was such below the standard of competence that the Petitioner effectively was deprived of a meaningful opportunity to have his case heard. Now, the BIA denied the Petitioner's motion to reopen, finding that the equitable tolling could not apply because the Petitioner did not act with due diligence. Right. In making that finding, the Petitioner was facing at that time in 2005 when he retained a full and fair hearing. The Petitioner did not have the knowledge, Your Honor, at that time that he was the victim of ineffective assistance of counsel. He did not have the immigration record. It was impossible for present counsel to have And if he overstayed... Let me ask you a different question, but aiming to the same ultimate issue, and that is to say, at what point does he have to file a motion to reopen to be timely, or how long does he get tolling? I'm not asking you to concede, but I'm putting it forward as a hypothetical. Let's say you made a mistake. You should have filed a motion to reopen based on ineffective assistance of counsel shortly after you got the case. You saw the name Walter Pineda, and you said, oh, my God, this is obvious. Details to be filled in later, but ineffective assistance of counsel is very likely. So it was your mistake. I'm hypothesizing. I understand you had your reasons, and they might not have been mistaken. Yeah, yeah. So the hypothetical is that you made a mistake. As I understand our case law, diligence and when the tolling period ends is not when his counsel had reason to know there might have been, but rather when he knew. Am I wrong on the law? So when does he know? Not when you could have known, but when does he know? He knows when he finally obtains the record, reviews it with his counsel, and together they realize that the representation fell far below any acceptable level of competence. And when did that happen? That happened, Your Honor, in 2007. We got the FOIA in October 2007. The motion to reopen was filed in December 2007. October, November, December. Yes, Your Honor. Okay. So if the 90 days starts to run from the time you get the file and sit down with your client, you're timely. Yes, Your Honor. Okay. And the motion to reopen was filed. And I want to point out that had he overstayed the voluntary departure to pursue a speculative motion to reopen based on ineffective assistance of counsel, by overstaying the voluntary departure order, he would actually render himself ineligible for that very relief cancellation, because if you overstay voluntary departure order, you're not eligible for cancellation, adjustment of status, and various other forms of relief. And so he was really in a very difficult situation. And he made a reasonable decision. Assume for purposes of this question that we are willing to say that the motion reopens timely. Yes, Your Honor. And it's timely because of tolling, because of ineffective assistance of counsel, of which he was not aware until October of 2007. Okay. So now we have the question as to whether or not there was ineffective assistance of counsel. That's correct, Your Honor. Do we need to send it back under Ventura? Well, I think that's what the government is proposing. Yeah, yeah, yeah. I got that. What do you propose? Well, Your Honor, I think the record is clear. And the fact that the BIA did not skip over the question of ineffective assistance of counsel and jumped right to whether the motion to reopen was timely and whether there was due diligence, I think it could be possible for this Court to say, well, they wouldn't have gotten to that analysis of due diligence if they didn't see from the record that there was ineffective assistance of counsel. Nevertheless, Your Honor, if it has to be remanded to the BIA with the finding that this motion to reopen was timely, I think it would be very difficult for any court to find that the Petitioner had effective assistance of counsel. The record from every — from the meetings or the lack of meetings that counsel had, prior counsel had with Petitioner, to sending attorneys who knew nothing about the case, who had never met with the Petitioner, to failing to investigate the facts. Okay. So let's assume that we say it's timely, that the filing is timely for the motion to reopen because of the tolling provision. We say under Ventura we will let the BIA or the IJA decide whether or not there's been ineffective assistance of counsel. And let's say that the agency, no surprise, finds ineffective assistance of counsel, both in terms of below-standard behavior on the part of the attorneys and in terms of the may-affect standard. Yes. Now we're back to what? What's the question? The question is then withholding of removal and exceptional hardship? No, Your Honor, cancellation of removal. He gets to have his cancellation case heard again.  I understand. But then we're on the question of whether or not there's been exceptional hardship. Is that the question that's going to be addressed on the cancellation of removal? Yes, Your Honor. And there is evidence that just was not presented. On the hardship claim, I think most of the stakes that he's put down in the U.S. and much of his family has been born after he was ordered removed. He was married to a U.S. citizen at the time, Your Honor, and he had two children with a third on the way. So I wouldn't say that he acquired. So he has a shot at hardship is what you're saying? Absolutely, Your Honor. Absolutely. Okay. Let's hear from the government, and then we'll give you a minute. Thank you. Good morning, Your Honors. I'm Carmel Morgan on behalf of the Respondent, the U.S. Attorney General. It's the government's position that the board did not abuse its broad discretion in denying the motion to reopen, where it was filed more than two and a half years after the board's final order and more than nine months after the petitioner illegally reentered the United States. The board correctly determined that the motion was untimely and that the petitioner did not demonstrate. Counsel, I don't understand one detail of the authorities, and that is why the knowledge has to be knowledge of the petitioner rather than knowledge of the petitioner or his attorney, whoever has or can diligently obtain knowledge first. Can you explain that to me? I'll see if I understand your question. I'm afraid my answer may be — Your Honor, Judge Fletcher's question that don't the authorities say that the petitioner has to know, not just his attorney. And I understand that there is authority for that, but I don't understand why that's so. I mean, most things when you're an attorney, you know, and your client doesn't really understand them and would rather just leave it to you. Your Honor, I agree that the authorities say it has to be the petitioner's knowledge. As to why it doesn't also include knowledge of counsel, I cannot explain. Now, on the knowledge of petitioner and counsel, your adversary explained that they could not have filed and could not have known enough to file a motion to reopen based on ineffective assistance until they examined the record. It would be pointless to obtain the record when the client was going to leave and terminate his motion to reopen anyway before the record could be obtained, and that when they did obtain the record, they acted within 90 days of obtaining the record. Why isn't that good enough? Yes, the government disagrees with the petitioner's argument there. The board's order came down in March of 2003. The petitioner sought new counsel really immediately thereafter, I believe, that he retained his present counsel, I suppose, early in April of 2005. At that time, it's the government's position that he could have filed a timely motion to reopen. I'm not sure why having a copy of the record was necessary. The type of complaints that he's putting. I don't know. When I was in practice, I never could write a motion until I knew what the facts were. Well, I think he could have filed a timely motion based on the petitioner's knowledge of what happened in his proceedings, which was that he was totally unprepared to testify that he didn't meet frequently with counsel, that. . . Was he required to comply with matter of Lozada before filing a motion to reopen based on ineffective assistance of counsel? I believe that's an open question with the court. What I suggest that he could have done is discuss with counsel. He had the board's order denying his appeal, and the recent Avignon case used that date of the board's denial of an appeal as when the petitioner should have been on notice that perhaps something might have been wrong with his proceedings below. The petitioner doesn't say he ever had that discussion with his counsel in April of 2005. They were, I think, operating under let's go and try and get you adjusted through your wife, and they were pursuing other avenues. I'm not sure that they had that discussion. They probably, in government's point of view, should have. Yeah. But let me. . . I want to go back to Judge Kleinfeld's question in my exchange with the petitioner's counsel, just to make sure that we're on the same page in terms of what our rules are with respect to who has to have what kind of knowledge. With respect to tolling, I think I heard you say, but I want to make sure that I've heard you correctly, that your understanding of the law is it doesn't matter what the counsel's knowledge might have been as to ineffective assistance of counsel. What matters is the petitioner's knowledge as to ineffective assistance of counsel. Is that correct? That's how I read the Ninth Circuit cases, Your Honor. So we're on the same page with what the law is. Whether that ought to be the law or not, that is the law. As I understand. So the question is, when did he know? Are you saying he knew when the first order came down, that he knew there was ineffective assistance of counsel? He should have been on notice. I'm not asking that. I didn't understand that. You're saying he knew because his lawyer hadn't met with him enough. My gosh, clients are always complaining about not getting enough hand-holding, and most of the work a lawyer does, you don't even have to talk to the client. That sure isn't enough to trigger Lozada compliance. I would never have filed a discipline charge against a lawyer because a client he had had said, well, he didn't spend enough time talking with me. There's no more than that. Your Honor, the FOIA request wouldn't have brought that to light. You can't tell from reading a record how many times your counsel met with you. That's the weakest possible ineffective assistance claim, though. What you find from the FOIA request is just what kind of stuff did this lawyer file? Is it competent-looking paper? Yeah, I would say on the surface, he did file competent-looking papers. But regardless, let's see. Mr. Pena, did he file competent-looking papers? Yes, actually. Oh, my gosh. That's nice to hear. Yeah. It looked like Mr. Williamson did the majority of the work on the cancellation petition. He was the one that appeared that day in court and provided the questioning. Yeah, I do understand from what goes on here that Mr. Pena subcontracted out to new lawyers every time he had a hearing. Right. Tell me something else. You heard the discussion we had with government counsel in the last case. I have been toying with the idea in the whole run of cases involving good citizens in every way, except they're not citizens, of just directing mediation with the idea that that way they'll get handled according to whatever the program is that the government is working out for these people. Yeah. Yesterday I agreed to mediation in a case that was before the court, and I put another case that was on this same docket for this week into mediation. I did approach the San Francisco ICE office about this case as well, because I wanted to know in advance what their position might be. They told me that because he has some criminal background issues and he illegally reentered the United States, that they did not think at this time that this would be a good candidate for prosecutorial discretion. You mean because he snuck back in? Yes, and he had a number of DUIs, a domestic violence arrest, and a concealed weapon. I think the number is the number one in number of DUIs. You said plural. Is it plural? As I recall from reading the record, there were two, I think. I could be incorrect. Okay. I think there's one, but we can find out. There may be one. I think there was another arrest where he gave false identity documents or falsely identified himself to a police officer. He's not quite. We do have minor criminality in the background. That's right. I don't contest that at all. That's correct. But even discounting that, I'm afraid. I don't know what the guidelines are going to turn out to be, but I doubt they would extend to somebody who illegally reenters after being either voluntarily or forcibly removed. I did at least try and pursue that avenue before argument. Okay. Okay. And whether or not they would voluntarily go to mediation when you go and say, well, do you want to do it, is distinct from if we suggest mediation. That's a different question. Oh, absolutely, Your Honor. If you ordered mediation in this case, we would comply with that order. Yeah. Okay. I'm just letting you know in advance that you did your own sort of internal consultation. That's correct. Which I appreciate. I mean, it's nice to have that level of preparation. Yeah. It worked in the other cases that were set for argument, but not in this one. Now, if we were to not send it to mediation and just deal with the case as we have it, and if we were to find that it's timely. Yes. So, therefore, we've got a timely motion to reopen. And then the question is, was there ineffective assistance of counsel? What does Ventura tell us? I mean, we've got one odd case. I think it's an oddball case, but we've got one oddball case in which we said, listen, we understand that this ordinarily goes back on Ventura for ineffective assistance of counsel, but it's so clear we're going to decide it ourselves. And we've got other cases that say we send it back on Ventura for determination by the agency of ineffective assistance of counsel. Is that a discretionary call for us to make, or are we bound to send it back under Ventura? The government's position is that you're bound to send it back under Ventura. I think, Your Honor, in addition to the question of whether there was ineffective assistance, there's a further question of whether or not there was any prejudice. I think it's unlikely, actually, contrary to what Petitioner's counsel stated, that he could show prejudice. This is a cancellation case which is discretionary. Some of his claims. Prejudice is, I mean, it's the may have affected sort of standard. But you're saying that our former Chief Judge Wallace is wrong in the case of Laura Torres when he decided ineffective assistance of counsel without sending it back on Ventura? I'm not necessarily saying that's wrong. No, I think you just did, because I think you said we have no discretion. And he took on an ineffective assistance of counsel case. He discussed Ventura, and he says, I'm not sending it back. I'm deciding it right now. I think I would have to look more carefully at the facts of that case. I'm not conceding necessarily, but there could be a case, perhaps, and maybe Laura Torres was one where it's clear on the record, absolutely clear that there was ineffective assistance. And the government's position is this is not one of those types of cases. So we would ask that you send it back to the Board. I wanted to bring forward, too, that even if you discounted the period, the short period of a few weeks after the Board's order before he departed to Mexico, the petitioner returns to the United States in 2007. I believe it was March. March 4th. But he didn't file the motion to reopen until December. Petitioner's counsel didn't tell us when in 2007 she requested the record. I guess. No, no, I think she requested the record in October. And received it in October. Maybe she requested it in September. Yeah. There was some delay between the time he comes in and the request for the record. Right. No question about that. It's a bit of speculation on the government's part, but it appears from the record that he sought the motion to reopen only because he was unsuccessful in getting a waiver of inadmissibility with regard to the I-130 visa petition that his wife filed. And I think under this Court's decisions in both Aviglian and Valeriano, the fact that he was pursuing a different form of relief doesn't necessarily excuse him from the 90-day deadline. Of course it does not. Okay. We got the points. Thank you. Sure. We ask that you deny the petition for review. Thank you. Would you like a minute, Ms. Cho? Yes. Very much so. First of all, the Court is correct in recalling that the petitioner just has one DUI as an adult. He has one juvie offense, minor offense, found a gun in the schoolyard, picked it up. Someone said he's got a gun. Okay. That's about it. We don't – I actually don't know. The transcript doesn't help us in knowing whether he had another arrest for – What happened with the gun in the schoolyard? I couldn't hear some of your words. He found a gun in the bushes in the schoolyard, Your Honor. He picked it up, and someone reported him, and he was taken and charged as a juvenile for that, Your Honor. And was he – and what was the adjudication? I believe he was given one year of probation. For possession of a gun in the schoolyard? Correct. Okay. Also, I would like – government seemed to imply that when we had the BIA order, that that was enough to raise enough of a suspicion that we should have filed an ineffective assistance counsel motion without the record. I'd like to point out that the BIA order in this case was a summary affirmance, and so it shed no light on the reasons for why the cancellation was denied. What about the delay in applying for the record after it came back to the U.S.? Your Honor, we obtained the FOIA in October. It's not correct that we filed in September. It was several months before that, Your Honor. When he came back in March, he was detained in Arizona, and so the issue was trying to get him released on bond, getting the change of venue, and we couldn't file for the FOIA until we actually had his signature on a document. And so that was done, and if you look at the record at 223, that shows that in September we got a response to one of our FOIA requests, and there was some confusion about whether my office owed some money, which was a clerical issue, which we resolved, and then we received the FOIA in October 2007. And I'd like to reiterate that. What happened between March and September? Between March and September of 2007, Your Honor. That was he was first detained in Arizona, and so we had to try to get him released on bond, and then we had to file a motion to change venue. And then when he arrived in the Bay Area and I met with him, we started the process of exploring. Why not apply for the file a FOIA request when he gets in touch with you in March? Your Honor, he was detained in Arizona at the time. In order to make a FOIA request, you actually need to get the person's signature releasing their information. So there was several months of delay in asking for the FOIA, Your Honor. But again, the issue is when did Petitioner gain knowledge of the ineffective assistance counsel, and that was not until October. Is he he's not now in detention, is that correct? No, Your Honor. He's not in detention. Okay. You're over, so if you have a point you want to use to sum up. I do, Your Honor. I would actually like to say that this is a story about a family. And, you know, outside of all the legal issues, this is very sad and tragic. The record shows what the family went through when the father left, and I think in the end we want to think about how to see this. And I would not be all that enthusiastic, Your Honor, about going into mediation because I have also approached DHS counsel, ICE counsel, and they have vehemently stated their objection to any kind of compromise. So if you're going to, I'm not telling you what our answer is going to be because I don't know what our answer is going to be. But if our answer were that the reopen, filing to reopen is timely and we remand under Ventura for a determination of ineffective assistance of counsel, you would prefer that outcome to mediation? Yes, Your Honor. Okay. Thank you. Thank you. Thank both sides for their arguments.
judges: Hug, Kleinfeld, W. Fletcher